# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1840-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

EDWARD M. KNOX,
a/k/a EDWARD KNOX,

    Defendant-Appellant.

_____

       Submitted March 25, 2025 – Decided April 14, 2025

       Before Judges Chase and Vanek.

       On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 19-06-1346.

       Jardim Meisner Salmon Sprague & Susser, PC, attorneys for appellant (Michael V. Gilberti, on the briefs).

       Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Kevin J. Hein, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

This one issue direct criminal appeal arises out of the trial court's order granting the State's motion to admit certain evidence under N.J.R.E. 404(b) at defendant Edward Knox's jury trial. After being convicted of fourth-degree criminal sexual contact and sentenced to three-year's probation, defendant appeals. We affirm.

I.

On January 7, 2019, C.S.[1] heard a knock at her door. When she answered, defendant told her that he was there for a termite inspection. C.S. recognized defendant from a previous visit and let him in.

Upon entering the home and closing and locking the door behind him, C.S. testified that defendant asked her "if she was married, . . . had a boyfriend, if anyone was home, if [she] was sure anyone was home, [and] if [she] liked older men still."[2] At the time of the incident only C.S.'s dog, and her nearly five-year-old son, were in the home.

---

[1] We employ initials to identify the victim to protect her privacy. R. 1:38-3(c)(12).

[2] She recalled defendant commenting on the age difference between her and her boyfriend at the prior visit; the boyfriend was in the home at that time.

A-1840-23

C.S. was not expecting a follow-up termite inspection, her boyfriend set up the inspections, so she had no reason to doubt defendant when he told her he was there for that reason.

Once defendant was in the home, C.S. brought him to the kitchen area where the work would be performed; her son came down to the area from the upstairs and then went back up. C.S. testified that she was wearing pajamas and a "large fluffy robe," when she answered the door, so after leading defendant to the kitchen, she informed him she was going to her bedroom to change, and that after he was done in the kitchen, she would bring him outside to the crawl space under the house.

C.S. testified that the following events transpired:

> I walked away going towards my room cause I thought he was going to go back to the spot that I showed him to check and he kind of followed me and I turned around and he was right there very close, kind of backed me up into like furniture, and he reached around with his right hand, grabbed my butt and pulled me close. And then with his left hand he tried to slip it up into my robe.

C.S. stated that when defendant's hand made contact with her chest, over her robe, she "pushed him away," and "jabbed him with [her] fingers and pushed him [in the] opposite direction of where my bedroom was," and the two of them then "kind of stood there a little awkward."

3

C.S. then told defendant she was going to change into something appropriate, but testified she was "planning on getting a gun or getting my phone and calling somebody." According to C.S., defendant then said she didn't need to change because what she was wearing was fine. Defendant then told her "[w]e can talk it out, we can go to your bedroom and work it out."

C.S. testified that she immediately went to her bedroom, grabbed her handgun out of her bedside table, took the safety off, and went to the bedroom door where defendant was standing approximately ten feet away down the hallway. C.S. did not immediately brandish the weapon, but told defendant to get out, which he refused to do. Defendant then told C.S. they could work things out, and suggested they go to C.S.'s bedroom and "see what happens." Upon defendant's refusal to leave, C.S. pulled the weapon in front of her, pointed it at defendant, and again told defendant to leave. She testified that defendant didn't seem too startled about it, which made her more uncomfortable. C.S. stepped towards defendant, asked him to leave several more times, which he again refused. C.S. then "pointed at the door and told him to get out," and defendant then unlocked the door and left quickly, driving away in his car.

After defendant left the home, C.S. immediately called her boyfriend and then called 911. C.S. gave a statement to police, describing defendant's

4

appearance and vehicle. C.S. told the police she believed defendant worked for her termite company; the police then contacted the termite company and determined defendant did not work for them.

C.S. and her boyfriend discussed where they might know defendant from, and realized it was the Berlin Mart, and that he worked for a basement waterproofing company that had a stand in the mart. She remembered defendant had come to their home in 2017 to provide an estimate.[3] C.S. called the company and asked for the name of the person who provided them with the estimate.

This information was relayed to Somerdale Detective Howard Dawson. The detective then looked up defendant's name and found a social media review written by a woman in Delaware which included defendant's name and a written description of him. He then ran defendant's name in the automatic traffic system, which then generated a record for a black Chevy registered to defendant. This matched C.S.'s description of defendant's vehicle. The detective then created a photo array.

C.S. went to the Somerdale Police station and identified defendant as the assailant. As a result, a warrant was prepared, and police arrested defendant. The next month, a grand jury returned a two-count indictment charging

---

[3] He was not hired to perform the 2017 waterproofing job.

defendant with third-degree burglary, N.J.S.A. 2C: 18-2(a)(l); and third-degree sexual assault, N.J.S.A. 2C:14-3(a)(2). In May 2019, a second grand jury returned a superseding indictment, charging him with the same two violations.

The State filed a pretrial motion in limine under N.J.R.E. 404(b), asking the court to admit the testimony of two women at trial. These two women had previous meetings with defendant regarding estimates for basement work. The court held a Rule 104 hearing on the State's motion. At the hearing, both women testified, and the state proffered the testimony of C.S.

The first witness testified that in July of 2015 she made a request for Basement Waterproofing Specialists to come to her home to provide her with an estimate. She identified defendant as the employee sent for the estimate. She stated that after she let defendant inside the home, they went to the source of the water in the basement. She stated defendant did not seem to be paying attention when she pointed out the problem areas. Instead, he was looking around, particularly to a clothesline she had in the basement with her bras hanging on it. She stated defendant asked her if the bras belonged to her and that defendant was "just sort of like leering" at her, which made her feel very uncomfortable and "really skeeved out."

6

She also testified that while still in the basement, defendant asked her whom she lived with, to which she answered her sister. Defendant then asked her if her sister was home at the time, and she answered no. She testified that defendant next commented on her appearance saying she "would fit in well where he worked because all the girls there were very pretty." The two then went to the dining room and defendant gave her the quote for the basement work. While in the dining room defendant continued making comments about her appearance telling her she had a "sexy smile." She signed a contract for the work to be performed, testifying she felt very pressured. She called the company the next day and cancelled the contract. She also testified that she wrote a social media review only a few days after her encounter with defendant, and that she typically does not write such reviews.

On cross-examination defense counsel attempted to frame the comments made by defendant as awkward, but the witness stated the comments "were more than awkward," and that "[i]t didn't feel like he was being charming." When asked if defendant had touched her, she answered no.

The second witness testified that four days prior to the incident with C.S., she requested an estimate from Basement Waterproofing Specialists. Defendant was dispatched to her home. She testified that on the day of the estimate she

7

was home with her eighty-year-old mother, and her teenage son. She stated she offered defendant water, and then they sat at her dining room table to discuss the basement work, where he made statements unrelated to the work, including that "he has a metal thing in his head," and that she had beautiful eyes and a smile. She stated when defendant had mentioned the "metal thing" in his head, she felt she should be "empathetic and shared that [she] had had . . . breast cancer."

The two went down to the basement, where they spent approximately thirty minutes, with her son and mom "within ear shot." She testified that while down in the basement defendant told her she had a pretty figure and "[her] breasts look[ed] fine to him." Similar to the first witness's testimony, she stated that while in the basement defendant did not seem to be paying particular attention to the work he was there to quote. When they left the basement, she showed defendant the area outside where water was coming into the basement and testified that upon returning to the dining room table, defendant asked her out numerous times. She stated defendant never asked her relationship status.

She testified she tried getting defendant to leave for about fifteen or twenty minutes and eventually told defendant, "[y]ou have to go. It's time for bed. You have to get out of here and I'll call you tomorrow." On cross-

8

examination, she testified that defendant did not physically touch her at any point.

The State argued the prior acts evidence was proof of motive, opportunity, plan, and absence of mistake, and that they illustrated defendant's actions "were for the purpose of sexually arousing or gratifying [defendant]," which they asserted would be at issue during trial. In opposition, defendant argued the testimony was highly prejudicial propensity evidence that should not be submitted to the jury. He also argued there were no allegations of defendant physically touching either woman, only that he made romantic advances, which both women declined and then he left their homes.

On November 4, 2020, the court granted the State's 404(b) motion, permitting the use of the testimony of both women at trial subject to a limiting instruction. The court made findings of fact and conclusions of law and found that the State had satisfied the four-part test in State v. Cofield, 127 N.J. 328 (1992).

At trial, the victim and the two basement waterproofing customers testified. Defendant moved for a judgment of acquittal, which the court denied. Defendant exercised his right not to testify, and the jury returned a verdict

acquitting defendant of the burglary and third-degree sexual assault but convicting him of fourth-degree criminal sexual contact, N.J.S.A. 2C: 14-3(b).

On January 12, 2024, the court sentenced defendant to three years' probation with conditions, no contact with C.S., restitution of $4,200.44 and three-days' jail credit.

On appeal defendant argues,

> THE TRIAL COURT ABUSED ITS DISCRETION IN PERMITTING THE JURY TO HEAR TESTIMONY ABOUT TWO UNRELATED INCIDENTS -- FACTUALLY UNLIKE THIS CASE -- WHOSE PREJUDICE FAR OUTWEIGHED ANY PROBATIVE VALUE.

II.

Admitting evidence of other crimes, wrongs or acts is left to the discretion of the trial judge. State v. Marrero, 148 N.J. 469, 483 (1997). "We defer to a trial court's evidentiary ruling absent an abuse of discretion." State v. Garcia, 245 N.J. 412, 430 (2021). Our Supreme Court has stated that "sensitive admissibility rulings regarding other-crimes evidence made pursuant to Rule 404(b) are reversed '[o]nly where there is a clear error of judgment.'" State v. Green, 236 N.J. 71, 81 (2018) (alteration in original) (quoting State v. Rose, 206 N.J. 141, 157–58 (2011)). However, an evidentiary decision is reviewed de novo "where the trial court fails to apply the proper legal standard in evaluating

10

the admissibility of evidence . . . ." State v. Trinidad, 241 N.J. 425, 448 (2020); see also State v. Goodman, 415 N.J. Super. 210, 228 (App. Div. 2010).

III.

Under N.J.R.E. 404(b)(1), "evidence of other crimes, wrongs, or acts is not admissible to prove a person's disposition in order to show that on a particular occasion the person acted in conformity with such disposition." N.J.R.E. 404(b)(2) provides an exception to this rule, stating "[t]his evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute." Other crimes, wrongs, and acts can be defined as anything for which a defendant is not on trial. See State v. Darby, 174 N.J. 509, 518 (2002) (finding testimony about a robbery different from the one the defendant was currently facing charges for constituted other-crimes evidence). This type of propensity evidence is generally prohibited because of its "inflammatory characteristic" and thus "mandates a careful and pragmatic evaluation by trial courts, based on the specific context in which the evidence is offered, to determine whether the probative worth of the evidence outweighs its potential for undue prejudice." Cofield, 127 N.J. at 334 (quoting State v. Stevens, 115 N.J. 289, 303 (1989)). "'[B]ecause N.J.R.E. 404(b) is a

rule of exclusion rather than a rule of inclusion,' the proponent of evidence of other crimes, wrongs or acts must satisfy a four-prong test." State v. Carlucci, 217 N.J. 129, 140 (2014) (quoting State v. P.S., 202 N.J. 232, 255 (2010)).

"The four-part Cofield test governing the admissibility of other-crimes evidence is a well-settled feature of New Jersey's evidence jurisprudence." Green, 236 N.J. at 82. Under that standard:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2. It must be similar in kind and reasonably close in time to the offense charged; [4]
>
> 3. The evidence of the other crime must be clear and convincing; and
>
> 4. The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [Cofield, 127 N.J. at 338.]

To satisfy the first prong of Cofield, the evidence must have "a tendency in reason to prove or disprove any fact of consequence to the determination of the action." See N.J.R.E. 401 (defining "[r]elevant evidence"). The evidence must also concern a material issue, "such as motive, intent, or an element of the

---

[4]  In a subsequent case, the Court stated that "[t]emporality and similarity of conduct is not always applicable, and thus not required in all cases." Rose, 206 N.J. at 160.

charged offense . . . ." Rose, 206 N.J. at 160 (quoting P.S., 202 N.J. at 256). Under Cofield, an issue is material if "the matter was projected by the defense as arguable before trial, raised by the defense at trial, or was one that the defense refused to concede." Ibid.

The second Cofield factor "requires that the 'other acts' be 'similar in kind and reasonably close in time to the offense charged.'" Green, 236 N.J. at 83 (quoting Cofield, 127 N.J. at 338). However, that factor is "limited to cases that replicate the circumstances in Cofield." State v. Williams, 190 N.J. 114, 131 (2007); see also Cofield, 127 N.J. at 342 (holding a past conviction of conspiracy to distribute drugs was admissible in a subsequent case for conspiracy, unlawful possession and unlawful possession with intent to distribute).

The third prong requires clear and convincing proof that the person against whom the evidence is introduced actually committed the other crime or wrong. Carlucci, 217 N.J. at 143. "[T]he prosecution must establish that the act of uncharged misconduct . . . actually happened by 'clear and convincing' evidence." Rose, 206 N.J. at 160 (quoting Cofield, 127 N.J. at 338).

Lastly, the fourth prong is "generally the most difficult part of the test." State v. Barden, 195 N.J. 375, 389 (2008). "Because of the damaging nature of such evidence, the trial court must engage in a 'careful and pragmatic evaluation'

13

of the evidence to determine whether the probative worth of the evidence is outweighed by its potential for undue prejudice." Ibid. (quoting Stevens, 115 N.J. at 303). The analysis incorporates balancing prejudice versus probative value required by N.J.R.E. 403, but does not require, as does N.J.R.E. 403, that the prejudice substantially outweigh the probative value of the evidence. State v. Reddish, 181 N.J. 553, 608 (2004). Rather, the risk of undue prejudice must merely outweigh the probative value. Ibid.

A.

First, defendant posits that because he was charged with making an entry under false pretenses while in the other matters he was in the witnesses' homes on legitimate service appointments, the circumstances were different and not relevant to his burglary charge. He also contends that because he was charged with sexual assault, the other encounters were not relevant because there were no allegations of improper touching, and he only made "awkward and inappropriate comments."

Evidence is relevant when it has a "tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. "Relevancy consists of probative value and materiality." State v. Buckley, 216 N.J. 249, 261 (2013). "Probative value concerns the tendency of evidence to

establish the proposition that it is offered to prove," and "[m]ateriality concerns the relation between the propositions for which the evidence is offered and the issues in the case." State v. Hutchins, 241 N.J. Super. 353, 359 (App. Div. 1990) (citations omitted). Evidence need not be dispositive, or even strongly probative, to be relevant; rather, "the primary focus in determining the relevance of evidence is whether there is a 'logical connection between the proffered evidence and a fact in issue.'" State v. Willis, 225 N.J. 85, 98 (2016) (quoting State v. Covell, 157 N.J. 554, 565 (2016)). However, to satisfy Cofield's first prong, "the material fact sought to be proved must be one that is actually in dispute and cannot merely be offered to indicate that because the defendant is disposed toward wrongful acts generally, he is probably guilty of the present act." Ibid. (first citing Cofield, 127 N.J. at 338; and then citing State v. Nance, 148 N.J. 376, 386 (1997)).

For the first prong, the court found the testimony of the two waterproofing customers "[had] a 'tendency in reason' to prove that the defendant's purpose in going to and gaining entry to [C.S.'s] home was to interact with her in a sexually oriented way including allegedly going beyond what he had done before by making unwanted sexually oriented physical contact." The court found that for this case, "the purpose of sexual gratification is not self-evident" and that "no

alternative source of evidence about [defendant's] purpose in allegedly touching [C.S.'s] buttocks that would render the evidence regarding his contact with the other female homeowners unnecessary." The court also found the evidence was relevant to the State's absence of mistake argument since defendant contended the touching was a "misunderstanding."

In State v. Stevens a police officer used his position of authority to get two women, that he had taken into custody on two separate occasions, to remove articles of clothing, under the pretext that he was looking for evidence. 115 N.J. at 294. Our Court allowed the use of evidence from three other instances in which the officer had allegedly used his authority to get other women to either remove articles of clothing, or to engage in sexual relations in exchange for his assistance with evidence he had on them. Id. at 297. The Court reasoned that if the jury found the defendant had made the contact, then the testimony was relevant to show "[defendant's] conducted the searches to gratify his sexual desires and did so knowing that such conduct was unauthorized." Id. at 306-07. Further, the Court found the evidence went to the material issues of the officer's "purpose for conducting the searches and his knowledge that such conduct was an unauthorized exercise of his official position—evidence of the circumstances

in which defendant had previously used his office to intimidate women into disrobing or providing sexual favors was highly probative." Ibid.

Here, the trial court did not abuse its discretion in allowing this testimony to be admitted for the limited purpose of motive, intent, and absence of mistake. When the testimony is relevant to motive, and intent "a 'wider range of evidence,'" is admissible to shed light on motive or intent when these issues are material. Covell, 157 N.J. at 565 (citing State v. Rogers, 19 N.J. 218, 228 (1955)). The testimony given by the waterproofing customers could lead to the finding that defendants' purpose was for sexual gratification. This is evidenced by defendant's comments to the first woman about her bras, and "sexy smile," along with his leering at her, and lack of attention to the work he was there to quote, coupled with his comments about the second woman's breasts and figure. It is also relevant to show absence of mistake concerning defendant's purpose for touching C.S.

## B.

Defendant also argues the trial court erred by discounting the second Cofield prong by stating the "requirement is generally not applicable when the proffered evidence goes to motive," and then noting the testimony of both customers involve defendant "allegedly using an ostensible . . . legitimate

business purpose" to gain entry to their homes in order to make sexual comments and advances. Defendant argues the two waterproofing customers called to request an estimate, and he gave them estimates. According to defendant, the inappropriate comments he made during these visits "should not, in any way transform his lawful and invited entry and or alter the legitimate purpose [for which] he was there."

The second prong—whether the proffered evidence is similar in kind and close in time to the charged offense—is typically not applicable if the proffered evidence goes to intent or motive. State v. Collier, 316 N.J. Super. 181, 194 (App. Div. 1998), aff'd. o.b. 162 N.J. 27 (1999) (indicating that similarity should not be a requirement for admissibility where motive is sought to be shown); State v. Nance, 148 N.J. 376, 389-390 (1997).

Although defendant did not enter the other homes by using false claims, the court did not abuse its discretion in determining that the events were similar. Defendant obtained knowledge about and accessed the homes of the two waterproofing customers based on their requests to obtain estimates. Once inside, he made sexually related comments to each of them. Similarly, in the present case, defendant first provided an estimate to C.S., in 2017, gaining knowledge about and access to her home at that time. Subsequently, in 2019,

upon entering C.S.'s home, defendant asked if anyone else was home. Defendant also posed the same question to one of the other witnesses, while leering at her undergarments in the basement. While there may have been no physical contact in the other acts, they were sufficiently similar to be highly probative of defendant's intent. Moreover, one of the waterproofing estimate incidents took place only four days prior to C.S.'s incident, clearly close in time.

C.

Under the third prong, defendant concedes the trial court determined the testimony evidence was "clear and convincing that [he] had these encounters," but that those "facts were never at issue." Here, the court determined it was satisfied because the testimony of both women was "credible and compelling," and consistent with prior statements they had given. Therefore, the trial court did not abuse its discretion in finding this prong.

D.

Lastly, defendant asserts the testimony given by the two waterproofing customers had "no probative value to any element of either charge," and even if some tendency existed, the testimony was "sufficiently dissimilar" to the claims in the present case, as such, it should have been excluded by the trial court. He argues the testimony of the two women, when viewed in the context of this case,

19

was "minimally relevant," but "highly prejudicial," and likely viewed as "propensity evidence."

"Prior-conduct evidence has the effect of suggesting to a jury that a defendant has a propensity to commit crimes, and, therefore, that it is 'more probable that he committed the crime for which he is on trial.'" Willis, 225 N.J. at 97 (quoting State v. Weeks, 107 N.J. 396, 406 (1987)).  For that reason, "[i]f other less prejudicial evidence may be presented to establish the same issue, the balance in the weighing process will tip in favor of exclusion."  Green, 236 N.J. at 84 (quoting Rose, 206 N.J. at 161).  However, evidence that goes to motive or intent requires "a very strong showing of prejudice to justify exclusion." Covell, 157 N.J. at 570.  Particularly when the State has no other independent proof.  See e.g., id. at 570-72 (holding the trial court did not abuse its discretion in admitting defendant's prior statement regarding a prior act of lewdness involving a young girl because it was the only evidence the State had to prove defendant's motive or intent to the nature of the charged crime of luring an eight-year-old girl who was riding her bike); see also Stevens, 115 N.J. at 308 (holding the trial court did not abuse its discretion in finding the probative value of the other crimes evidence outweighed its capacity for undue prejudice, because the

State lacked any other "independent proof tending to establish that defendant's purpose in searching the victims was to gratify his sexual desires.").

The court found this prong was satisfied because the probative value of the evidence was not outweighed by the prejudice to the defendant. The court reasoned that in the present case "[t]he probative value of the evidence . . . is significant as it is material to the mental state requirements of . . . the criminal sexual contact defenses," noting there were no alternative evidence sources that would be "less prejudicial." Further, the court determined that any prejudicial effect "is not especially inflammatory," particularly when compared to State v. Cusick, 219 N.J. Super. 452 (App. Div. 1987), where the court allowed evidence of defendant's prior convictions for the sexual assaults of young girls, in order to prove defendant's acts "were done for purposes of sexual arousement or gratification." (Cusick 219 N.J. Super. at 465).

The trial court did not abuse its discretion in determining there was a "slight prejudicial effect," which was not outweighed by "the significant probative value of the evidence at issue" especially when compared to Cusick. The testimony by both women went to the mental state of both the burglary and the criminal sexual contact. Here, the State needed to prove that defendant's purpose in touching C.S. was for sexual gratification. Outside of C.S.'s

testimony there was no alternate evidence for the State to use to meet its burden in proving its case. Considering defendant had defended himself by saying this was a misunderstanding, the trial court did not abuse its discretion in finding this evidence was slightly prejudicial, and its prejudicial effect did not outweigh its "significant probative value."

To the extent we have not specifically addressed any remaining arguments, it is because we find them to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division