120 N.J. Super. 68 (1972)
293 A.2d 399
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN B. SLOBODIAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 23, 1972.
Decided July 5, 1972.
*71 Before Judges CONFORD, MATTHEWS, and FRITZ.
*72 Mr. John H. Ratliff, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Gary H. Schlyen, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph D.J. Gourley, Passaic County Prosecutor, attorney).
PER CURIAM.
Defendant was indicted on April 10, 1968 by a Passaic County grand jury for the murder of his wife on March 1, 1968. N.J.S.A. 2A:113-1 and 2. He was convicted after a jury trial on December 11, 1968, and on January 8, 1969 sentenced to a term of 14 to 15 years in State Prison, Trenton. His conviction was appealed and this court affirmed in an unreported opinion. Thereafter, the Supreme Court granted certification and reversed the conviction on the ground that certain statements made by defendant in police headquarters after his arrest, which were adduced in evidence by the State during the trial, were obtained in violation of defendant's constitutional right to counsel as delineated in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). State v. Slobodian, 57 N.J. 18 (1970). Defendant was again tried before a jury in Passaic County Court and again found guilty of second degree murder on January 27, 1971. He was sentenced on February 24, 1971 to a term of not less than 14 nor more than 15 years in State Prison, Trenton. This appeal followed.
The facts adduced at the second trial are essentially the same as those set forth in the Supreme Court's opinion in State v. Slobodian, above, except, of course, that the statements given by defendant in police headquarters were not introduced as part of the State's direct case.

A
Defendant took the stand and testified as to his recollection of the facts surrounding the death of his wife. During *73 cross-examination the State was permitted to refer to the oral statements given by defendant in police headquarters for the purpose of affecting his credibility. These statements were the same which the Supreme Court found to have been obtained from defendant in violation of his constitutional rights. The trial judge permitted their use for the limited purpose indicated after he conducted a voir dire out of the presence of the jury and determined that they had been voluntarily given to the police by defendant. The State was also permitted to produce as rebuttal evidence those portions of defendant's statements which contradicted his direct testimony through the testimony of two police officers who heard the original statements.
Defendant argues that this use of the statements in question violated defendant's rights under the Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States as enunciated in Miranda. We disagree. The issue raised in this argument by defendant is squarely answered by the opinion of the Supreme Court in Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). The court in Harris held that although the defendant's prior inconsistent statements which were voluntary had been made to the police under circumstances rendering them inadmissible for substantive purposes under Miranda, such statements could properly be used to impeach his credibility, since "The shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." 401 U.S. at 226, 91 S.Ct. at 646, 28 L.Ed.2d at 5.
Harris was decided after defendant's second trial and sentencing (February 24, 1971). There is no problem however as to whether its holding should be deemed merely prospective or retrospective as well. The court held that it was not making new law, contrary to Miranda, but rather that the strict holding of Miranda did not extend to the precise issue:
*74 Some comments in the Miranda opinion can indeed be read as indicating a bar to use of an uncounseled statement for any purpose, but discussion of that issue was not at all necessary to the court's holding and cannot be regarded as controlling. Miranda barred the prosecution from making its case with statements of an accused made while in custody prior to having or effectively waiving counsel. It does not follow from Miranda that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, provided of course that the trustworthiness of the evidence satisfies legal standards. [401 U.S. at 224, 91 S.Ct. at 645, 28 L.Ed.2d at 4]
We are in accord with these comments and follow them. Cf. State v. Falco, 60 N.J. 570, 292 A.2d 13 (1972).
Defendant also argues that under Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), his statements could only be used to impeach him as to collateral matters. This argument was answered by the court in Harris when it noted that it was not persuaded that there is a difference in principle with respect to use of such statements as to direct matters as opposed to collateral.
Defendant has also raised several other arguments in connection with the use of the statements for impeachment purposes, none of which we find to have merit. There is ample evidence to support the trial judge's finding that the statements were given by defendant to the police voluntarily. We find that the trial judge properly restricted the scope of the use of the statements and correctly instructed the jurors as to how they might be used by them in their deliberations. Finally, there was no mistaken exercise of discretion by the trial judge in permitting the State to introduce relevant portions of the statements as rebuttal evidence. Defendant's claim that the statements used were not in conflict with his direct testimony is frivolous.

B
Defendant next contends that it was error for the trial judge to have permitted the police to testify as to statements made by defendant after the shooting when he admitted *75 the police to his tavern. Defendant is incorrect in his contention that the use of the statements violated his Miranda rights. Both statements, which amounted to direct and indirect indications that defendant shot his wife, were blurted out by defendant without any interrogation by the police. In fact, after the first statement defendant was advised by a police officer that he had "said enough." The second statement immediately followed this warning and came while the police were examining the decedent's body in an effort to determine whether she was living or not. The warnings required under Miranda v. Arizona, above, are to be given by the police prior to interrogation of a suspect by them. As noted, there was no interrogation here. There is no Miranda problem.

C
Defendant's next argument is that the trial court erred in admitting evidence of prior crimes. Approximately two months prior to the shooting defendant had threatened his wife with a pistol in the presence of her father, brother and a family friend. The State proffered testimony of the three eyewitnesses to the threat to show the defendant's state of mind toward his wife. We agree with the trial judge who overruled defendant's objections that the testimony was remote and irrelevant and therefore unnecessarily prejudicial to him. This evidence was properly admissible under Rule 55 and Rule 4. See State v. Kociolek, 23 N.J. 400 (1957). In addition, the trial judge correctly instructed the jurors as to the limited purpose for the admission of this testimonial evidence.
We also reject defendant's argument that the prosecutor's reference to the prior crimes evidence during his summation was improper and prejudicial. The prosecutor quite properly referred to the prior crimes evidence and the reason for its use during the trial. We observe that his references came about because of specific references thereto by defense counsel during summation.

*76 D
We disagree with defendant's argument that the trial court misstated the law in charging the jury. First, the trial judge properly referred to the elements of first degree murder in defining for the jurors the contours of second degree murder. We agree with the trial judge that the reference to first degree murder was required in order to give the jury a full understanding of our law with respect to murder. In addition, the trial judge carefully and articulately informed the jurors that he was referring to first degree murder only for this purpose and that they were not to consider the crime of first degree murder in their deliberations.
We see no merit to defendant's argument that the judge misled the jury in his supplemental charge on manslaughter. Defendant concedes that the trial judge correctly instructed the jury in his main charge with regard to both voluntary and involuntary manslaughter. The recharge with respect to manslaughter came as an answer to a specific question by the jurors. We find that the question was correctly answered and could not have misled the jurors. We find no error, much less plain error.

E
We also reject defendant's argument that the admission of the murder weapon and testimony with respect to a search of the tavern by the police officers for that weapon violated defendant's rights under the Fourth Amendment of the Constitution of the United States.
After defendant shot his wife he took the .22-caliber pistol which he used and placed it in a cupboard in the kitchen of the tavern. He then took a .32-caliber pistol and placed it in his pocket. The latter weapon was found on his person when the police arrived at the scene. The defendant during the first moments that the police were investigating stated that he had thrown the murder weapon in a garbage pail. This statement was ignored by the police ostensibly *77 because they had found a gun on defendant's person. On arrival at the police station, it was ascertained that the weapon which the police had was not the murder weapon. Police officers immediately returned to the tavern and looked in the garbage pail in an effort to find the .22-caliber pistol. Of course, it was not there. Subsequently, after a search of the kitchen, it was found in the cupboard.
Under these circumstances, we cannot find the warrantless reentry into the tavern by the police officers in quest of the pistol to have been violative of defendant's Fourth Amendment rights. Unquestionably the police, under the original circumstances presented, had the right to search for the murder weapon had they known the true facts, and in light of defendant's statement that he had thrown the weapon into the garbage pail. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). (The restrictions on such searches established in Chimel v. California, 395 U.S. 752, 23 L.Ed. 2d 685, 89 S.Ct. 2034 (1969), are not applicable, since Chimel is to be applied prospectively only). Coolidge v. New Hampshire, 403 U.S. 443, 456, 91 S.Ct. 2022, 29 L.Ed.2d 564, 577 (1971). Additionally, we note that the murder weapon was lodged in a business premises open to the public which was probably in danger of entry by others thereby jeopardizing recovery of the weapon by the police. Prevention of loss of evidence of crime is a category of valid, warrantless search, particularly where the search follows so hard on the commission of a homicide. Cf. Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

F
Defendant next argues that the State was improperly permitted to introduce new matters into the trial in its rebuttal evidence with respect to the distance at which a pistol would leave powder burns on the body of a victim. We disagree. Defendant in his direct testimony stated that he was *78 10 to 12 feet away from his wife when the pistol he had in his hand accidentally discharged. In view of this testimony, it was proper for the State to introduce testimony which tended to rebut this statement and place him much closer to his victim. The testimony disclosed that powder burns do not occur if a pistol is fired beyond 18 inches from the victim.

G
Defendant argues error on the trial judge's denial of his request, on the third day of trial, to dismiss his retained counsel because of dissatisfaction with counsel's handling of the case. The court declined the request but offered to permit the defendant to retain another lawyer to assist but not replace counsel. In view of the delay and possible mistrial which would have attended the replacement of original counsel in the midst of the trial we are satisfied that the determination was a correct exercise of discretion.

H
Finally, we disagree with defendant's contention that the sentence imposed by the trial judge was manifestly excessive. Considering the circumstances of the offense and the statutory maximum, we find no mistaken exercise of discretion on the part of the trial judge.
The judgment of conviction is affirmed.