727 A.2d 1063 (1999)
320 N.J. Super. 574
STATE of New Jersey, Plaintiff-Respondent,
v.
Oscar SANDERS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 16, 1999.
Decided May 6, 1999.
*1064 Ivelisse Torres, Public Defender, for defendant-appellant (Louise M. Cho, Designated Counsel, on the brief).
Peter Verniero, Attorney General, for plaintiff-respondent (Daniel I. Bornstein, Deputy Attorney General, of counsel and on the brief).
Before Judges PRESSLER, KLEINER, and STEINBERG.
The opinion of the court was delivered by KLEINER, J.A.D.
Tried to a jury, defendant Oscar Sanders was found guilty of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a) (count two), and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (count three). Defendant was acquitted on count one charging first-degree murder, N.J.S.A. 2C:11-3(a)(1) or (2). The victim was defendant's twenty-month-old daughter Atiana Davis. Although defendant resided with the child's mother, Rosalind Davis, since August 1994, defendant and Davis were not married.
Defendant was sentenced to a custodial term of twenty-five years with ten years of parole ineligibility on count two, and to a custodial term of nine years with four years of parole ineligibility on count three to be served consecutively to the sentence imposed on count two. Appropriate statutory penalties were imposed.
The State's evidence at trial may be briefly summarized. At approximately 11:00 a.m. on January 10, 1995, Davis left Atiana with defendant while she shopped at a nearby store.[1] When Davis departed her daughter appeared *1065 physically well. Davis returned to her apartment at approximately noon and found her daughter lying on a bed and appearing ill. According to Davis, defendant indicated that Atiana had diarrhea and had regurgitated and that he had placed the child in bed to nap.
At some time before 2:00 p.m., Atiana arose, entered the living room, and sat on Davis's lap. Atiana was whining. Davis wanted to take Atiana to a hospital emergency room. Defendant refused Davis's request, and instead gave the child a glass of juice and returned her to her bed. Both defendant and Davis periodically checked Atiana. At approximately 4:00 p.m., Davis again suggested taking the child to a hospital. Once again, defendant rebuffed the suggestion.
At 6:30 p.m., Davis walked to her sister-in-law's house to borrow diapers. When she returned, she found Atiana on the living room couch. The child appeared ill. Defendant placed the child on a blanket on the floor and moved her to a playpen in the bedroom. A few minutes thereafter, defendant returned to the bedroom and emerged shaking the child and explaining that the child was not breathing. Davis immediately called 911.
At 8:10 p.m., police officers responded and were followed by paramedics. According to one paramedic, the child's stomach was distended and bruised, her face was swollen near her eyes, and she was in cardiac arrest. The child was dead on arrival at the hospital.[2]
That same night defendant gave the police the first of three versions of the events of that day. Initially, in response to preliminary questions, defendant indicated that neither he nor Davis had left their apartment that day. Defendant also stated that Atiana had been sick with the flu since Christmas, that he had put her in bed at 6:00 p.m., and that he discovered her in distress at 8:00 p.m.
Upon being questioned in greater detail, defendant admitted that Davis had left the apartment for a short time during the day. He also indicated that he and Davis had engaged in a physical fight on the preceding day during which Atiana may have accidentally been struck. This version was reduced to a formal statement.
Defendant was questioned again the following morning. Defendant admitted he had not been entirely truthful in his formal statement given the preceding evening. Defendant admitted that while Davis was shopping, he had wrapped his fists with pillowcases and "play-boxed" with Atiana hitting the child more than ten times over a fifteen minute time span. He indicated that while "play-boxing" Atiana was standing in the corner and that the child struck her head on the wall. Defendant also stated that while bathing Atiana following "play-boxing," he noticed a bruise on the child's head and a knot on her hand but did not realize that she had been bruised on her abdomen.
A county medical examiner who conducted an autopsy found Atiana's abdomen bruised, distended, and tense, and found bruises on her lower back, buttocks, and thighs. The child had sustained severe internal injuries, including bruises on the lungs, the inferior vena cava, and the tissue surrounding the kidneys, the colon, and the bladder. Atiana also suffered a two-inch laceration of the liver. The examiner also found more than eight ounces of blood pooled in her abdominal cavity.
The examiner opined that the child died at least four hours after the injuries had been inflicted and concluded that the abdominal injuries were caused by multiple blunt force impacts as would be inflicted by a fist. He also opined that the type of force required to inflict the types of injuries he observed would be a minimum of eight to ten "very substantial or forceful impacts"[3] to the abdominal region.
*1066 I
Prior to trial, the State requested a pre-trial ruling to determine if evidence of defendant's prior assaultive behavior toward Davis would be admissible at trial under N.J.R.E. 404(b).
At the pre-trial hearing, Davis testified that defendant had been violent toward her on several occasions prior to Atiana's death. Davis testified that in November 1994 defendant punched her several times in her stomach while she was holding Atiana. On December 13, 1994, defendant punched her in the stomach and face while he held her in a headlock. Davis recorded the November assault and the assault on December 13, 1994, in a pocket calendar. On the evening prior to Atiana's death, defendant became angry and punched Davis in the stomach and face because Davis refused to give defendant money to purchase beer.[4] The judge concluded the evidence of defendant's prior assaults would be admissible at trial. Thus, when Davis testified as part of the State's case, the State elicited testimony consistent with Davis's pre-trial testimony. The judge ultimately explained Davis's testimony to the jury, in part:
This evidence was not submitted to you to show that the defendant is a bad person or has a disposition which shows that he is likely to have committed the crimes which he is charged with in this indictment that you are hearing.
Similarly, this evidence was not submitted to you to show a general disposition of the defendant to commit bad acts. This is not the purpose of such testimony and it should not be considered by you as such.
The rules of evidence do, however, permit such testimony if such testimony relates to some other fact in issue, such as a person's intent or absence of mistake or accident.
Here, the evidence may be considered by you only if you find it is ... relevant to the issue of whether or not the defendant acted knowingly, purposely or recklessly. You may also consider it if you find it is relevant as to whether the death of the victim was inadvertent or accidental. It can be considered by you only on those issues and for no other purpose.
II
On appeal, defendant raises six points of error:
POINT I
THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF DEFENDANT'S PREVIOUS ASSAULTS AGAINST ROSALIND DAVIS.
POINT II
THE TRIAL COURT SHOULD HAVE DECLARED A MISTRIAL DUE TO MS. DAVIS' PREJUDICIAL TESTIMONY WHICH WAS NOT PROVIDED TO DEFENDANT IN DISCOVERY.
POINT III
THE TRIAL COURT SHOULD HAVE OFFERED A MISTRIAL DUE TO DR. PEACOCK'S VIOLATION OF ITS ORDER LIMITING HIS TESTIMONY PURSUANT TO RULE 104.
POINT IV
THE TRIAL COURT SHOULD HAVE ORDERED A MISTRIAL DUE TO THE PROSECUTOR'S REPETITION OF DR. PEACOCK'S TESTIMONY IN SUMMATION WHERE SUCH TESTIMONY VIOLATED THE COURT ORDER PURSUANT TO RULE 104.
POINT V
THE TRIAL COURT ERRED IN SENTENCING DEFENDANT TO GREATER THAN THE MINIMUM TERMS AND IN IMPOSING PERIODS OF PAROLE INELIGIBILITY: THEREFORE THE SENTENCES WERE EXCESSIVE.
POINT VI *1067 THE TRIAL COURT ERRED IN SENTENCING DEFENDANT TO CONSECUTIVE TERMS ON THE AGGRAVATED MANSLAUGHTER AND ENDANGERING WELFARE OF CHILD CONVICTIONS: THEREFORE THE SENTENCES WERE EXCESSIVE.
A.
We agree with defendant's first point of error. We conclude that the admission of Davis's testimony concerning defendant's abusive behavior violated N.J.R.E. 404(b) and thus we are constrained to reverse defendant's conviction. We need not fully address defendant's additional claims but conclude that points two, three, and four are without merit, see R. 2:11-3(e)(2), and that points five and six[5] are rendered moot by our decision to reverse defendant's conviction.
N.J.R.E. 404(b) provides:
Evidence of other crimes or acts is not admissible to prove the disposition of a person in order to show that he acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.
Evidence of other crimes, wrongs, or acts may not be introduced into evidence to prove a defendant's criminal disposition as a basis for establishing guilt of the crime charged. State v. Nance, 148 N.J. 376, 386, 689 A.2d 1351 (1997); State v. Stevens, 115 N.J. 289, 293, 558 A.2d 833 (1989). Such evidence must meet a four-prong test for admissibility: (1) the evidence must be relevant to a material issue in dispute; (2) the other crime, wrong, or act must be similar in kind and reasonably close in time to the crime presently charged; (3) the evidence of the other crime, wrong, or act must be clear and convincing; and (4) the probative value of such evidence must not be outweighed by the prejudice to the defendant. State v. Cofield, 127 N.J. 328, 338, 605 A.2d 230 (1992). We can find no valid reason why evidence of defendant's assaultive behavior toward his paramour was admissible in this trial. The evidence was not relevant to any material issue, was not similar in kind to the offense charged, and its probative value was clearly outweighed by its apparent prejudice. As such, the evidence failed to meet the four-prong test for admissibility set forth in Cofield, supra.
We recognize that admissibility of other-crime evidence is left to the sound discretion of the trial court; however, using an abuse of discretion standard, we conclude that the trial judge here made a clear error of judgment. State v. Marrero, 148 N.J. 469, 483, 691 A.2d 293 (1997) (citing State v. DiFrisco, 137 N.J. 434, 496-97, 645 A.2d 734 (1994), cert. denied, 516 U.S. 1129, 116 S.Ct. 949, 133 L. Ed.2d 873 (1996)).
The evidence of prior assaults on Davis was not relevant to prove that defendant knowingly and purposely killed his daughter. N.J.R.E. 401. There is simply no "logical connection" between the evidence that defendant assaulted his paramour and the fact in issue, that is, whether defendant purposefully or knowingly killed his daughter. State v. Hutchins, 241 N.J.Super. 353, 358, 575 A.2d 35 (App.Div.1990).
The State charged defendant with knowing or purposeful murder. Accordingly, the State had to negate the claim of accident in defendant's statement to the police on the morning following Atiana's death. By offering evidence of defendant's assaults upon Davis, the State obviously sought to demonstrate that defendant had an assaultive disposition and was likely to have committed the murder and that Atiana's death was not an accident arising from "play-boxing."
Our conclusion is best explained by comparing the State's case here with the State's position in Nance, supra, 148 N.J. 376, 689 *1068 A.2d 1351. In Nance, the State's theory was that defendant killed the victim, Snow, due to jealousy arising from defendant's belief that Snow had a romantic relationship with defendant's girlfriend, Williams. To prove that defendant was jealous, the Court concluded that defendant's prior bad acts toward Williams arising from his jealousy was demonstrative of defendant's motivejealousyas to the victim Snow. Id. at 389, 689 A.2d 1351. The Court relied on its prior decision in State v. Wright, 66 N.J. 466, 468-69, 332 A.2d 606 (1975) (holding that defendant's act of starving one child to near death was relevant to the issue of the defendant's wilful state of mind regarding the starvation of a second child). The Court also cited State v. Mulero, 51 N.J. 224, 228-29, 238 A.2d 682 (1968), characterizing Mulero as a case in which the defendant's alleged physical abuse of his wife was admitted at trial to establish intent of the defendant for allegedly murdering his stepdaughter.
However, our reading of Mulero is quite narrow. In Mulero, the State elicited testimony from defendant's wife on redirect examination for the purpose of rehabilitating her credibility. The testimony, however, suggested that the defendant had beaten his wife prior to her daughter's death. The Court noted that the evidence of the prior abuse was properly admitted on redirect examination to meet defendant's point raised during cross-examination that the wife's testimony on direct examination was not credible. Id. at 229, 238 A.2d 682. However, the trial court permitted the evidence of the prior abuse of defendant's wife to demonstrate defendant's state of mind as he fatally struck his stepdaughter, if and only if the jury first found that defendant did hit his stepdaughter. Id. at 228, 238 A.2d 682. Upon review, the Court declined to hold that the trial court abused its discretion by permitting the wife's testimony of prior abuse to prove defendant's intent to do grievous bodily harm to his stepdaughter. Rather, the Court found no prejudice "even if the [jury] instructions were assumed to be erroneous":
The question then is whether it was harmful to tell the jury that the evidence could also be considered upon the issue of intent. Defendant's complaint must be that the jury likely gave that evidence a weight which rationally it was not entitled to receive upon that issue. But the jury was free to disregard that evidence as valueless, and it is likely that the jury did not lean upon it at all. The multiple injuries suffered by the deceased were such as to demonstrate inescapably that the assailant intended at least to do grievous bodily harm, the minimum intent necessary for murder in the second degree. Thus the case had to turn upon whether defendant did or did not administer the beating [of his stepdaughter] the State's case attributed to him, rather than upon the evidence addressed independently to the state of his mind.
[Id. at 229, 238 A.2d 682.]
The factual similarity between the other-crimes evidence in Mulero and in this case requires an analysis of the specific holding in Mulero. We construe Mulero as concluding that the admissibility of evidence of defendant's bad acts against a third party to prove defendant's intent as to the victim was not plain error in that particular case. We do not construe Mulero as holding that testimony of defendant's prior abuse of a third party is permissible evidence of defendant's intent to harm the victim.
Despite the Court's citation of Mulero in Nance,[6] in Marrero,[7] and most recently in State v. Covell, 157 N.J. 554, 566, 725 A.2d 675 (1999),[8] we conclude that the issues in *1069 Nance, Wright, supra, 66 N.J. 466, 332 A.2d 606, and Mulero, are quite distinct from the issues presented in this trial. Defendant's prior assaults upon Davis were simply evidence of defendant's assaultive personality and were offered by the State for the jury to conclude that defendant's assaultive personality demonstrated his actual intent to murder his daughter. By offering evidence of defendant's prior bad acts, the State sought to introduce evidence violative of N.J.R.E. 404(b), i.e., the "disposition of a person in order to show that he acted in conformity therewith."
B.
Even if the evidence of defendant's assaults upon Davis was properly admitted, we conclude the limiting instructions given to the jury were inadequate. In State v. G.S., 145 N.J. 460, 678 A.2d 1092 (1996), the Court instructs "that when a trial court admits [evidence of other crimes], the court must specifically instruct the jury about that evidence's limited relevance." Id. at 469, 678 A.2d 1092. The Court specifically reviewed jury instructions which were deemed inadequate in State v. Oliver, 133 N.J. 141, 627 A.2d 144 (1993); State v. Cofield, supra, 127 N.J. at 328, 605 A.2d 230; and State v. Stevens, supra, 115 N.J. 289, 558 A.2d 833. We have considered the instruction given to the jury here in light of similar jury instructions that the Court has consistently found inadequate and we conclude that the judge's instructions which we have cited, supra, were nothing more than a restatement of the general provisions of N.J.R.E. 404(b). The trial judge did not adequately explain why evidence of defendant's assaults upon Davis had been admitted and for what probative purpose that evidence might have been admitted except to state:
Here, the evidence may be considered by you only if you find it is ... relevant to the issue of whether or not the defendant acted knowingly, purposely or recklessly. You may also consider it if you find it is relevant as to whether the death of the victim was inadvertent or accidental. It can be considered by you only on those issues and for no other purpose.
We cannot consider such a general instruction as adequately limiting the purpose for which the jury was permitted to use this evidence. We, in fact, attempted to fashion an adequate instruction under the facts here and our inability to do so reinforces our first conclusion that the evidence was not admissible under N.J.R.E. 404(b).
The Appellate Division majority opinion in State v. G.S., 278 N.J.Super. 151, 650 A.2d 819 (App.Div.1994), fully analyzed the inadequacy of the jury instructions in Oliver, Cofield, and Stevens. Although the Supreme Court in G.S. reversed the majority decision and concluded that the failure of the trial court to issue proper limiting instructions did not result in prejudice to defendant, id. at 473-76, 678 A.2d 1092 (utilizing a "plain error" analysis, R. 1:7-2 and R. 2:10-2; and citing State v. Macon, 57 N.J. 325, 336, 273 A.2d 1 (1971)), the Court did concur with this court's majority opinion holding that the trial court's limiting instructions were insufficient. G.S., supra, 145 N.J. at 472, 678 A.2d 1092. In reaching that conclusion, the Court, specifically instructed:
On admission of other-crime evidence, the court must not only caution against a consideration of that evidence for improper purposes, it must through specific instruction direct and focus the jury's attention on the permissible purposes for which the evidence is to be considered.
[Ibid.]
The Court indicated that the jury instruction as given in State v. Cusick, 219 N.J.Super. 452, 467, 530 A.2d 806 (App.Div.), certif. denied, 109 N.J. 54, 532 A.2d 1118 (1987), was a correct limiting instruction. 145 N.J. at 471, 678 A.2d 1092. In reviewing Cusick, the Court in G.S. noted:
The defendant [Cusick] was charged with, among other offenses, sexually assaulting two victims. Defendant argued that he had intended only to swing and cradle one of the victims but that any sexual contact was inadvertent. The trial court admitted other-crime evidence to rebut defendant's *1070 claim of mistake and to establish defendant's intent. The court gave the following limiting instruction concerning the testimony of one of three victims from a previous unrelated sexual assault.
[Y]ou may not take the evidence from [the witness] and conclude from it that the defendant ... is a bad person, and thus has a disposition which shows that he is likely to have done the act which he is charged with, or to show a general predisposition of the defendant to commit bad acts....
The rules of evidence do, however, permit such testimony where such evidence... relates to some other fact in issue here, including motive.... Here the evidence was admitted as it may bear on the issue of whether the alleged touching of [the victims] was accidental or [whether] it was a mistake. Likewise, it might also bear on the defendant's motive for allegedly touching the victims here. This is to obtain some sort of sexual gratification, or on the issue of his intention to touch the children, victims here.
[145 N.J. at 471-72, 678 A.2d 1092 (citing Cusick, supra, 219 N.J.Super. at 464-65, 530 A.2d 806) (other citations omitted).]
The Court in G.S. admonished: " "more is required to sustain a ruling admitting such evidence than the incantation of the illustrative exceptions contained in the Rule." " 145 N.J. at 472, 678 A.2d 1092 (quoting Cofield, supra, 127 N.J. at 337, 605 A.2d 230 (quoting Stevens, supra, 115 N.J. at 305, 558 A.2d 833)). Here, the trial judge merely explained to the jury that they could consider the evidence of defendant's prior abuse towards Davis if it was relevant to his intent, or relevant to whether Atiana's death was inadvertent or accidental. He did not explain how the evidence might be relevant to these issues except by an implied invitation to the jury to consider defendant's prior acts as evidence of his assaultive character. The trial judge failed to focus the jury's attention as to what specific issues the evidence may bear upon. The absence of any specificity by the trial judge requires our conclusion that even if the evidence of defendant's assaults upon Davis were admissible as an exception to N.J.R.E. 404(b), the jury instruction was inadequate to meet the criteria approved in G.S.
STEINBERG, J.A.D., concurring in part, dissenting in part.
I agree with so much of the majority opinion that holds that the claims raised by defendant in Points II, III, and IV are without merit, see R. 2:11-3(e)(2), and that a written opinion regarding those points would have no precedential value. However, because I believe the trial judge did not mistakenly exercise his discretion in admitting Davis's testimony concerning defendant's prior abusive behavior towards her, and that the trial judge gave adequate limiting instructions regarding the potential use of that testimony, I would affirm defendant's convictions for first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a), and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). I also note that before Davis testified the jury was already aware of the incident on the evening before the homicide because defendant referred to it in his statement that had already been admitted into evidence.
I recognize that other-crime evidence or other-bad conduct evidence may simultaneously be highly probative and yet, at the same time, extremely prejudicial. See State v. Stevens, 115 N.J. 289, 300, 558 A.2d 833 (1989). Accordingly, despite its probative worth, other-crime evidence which is offered solely to prove criminal disposition is inadmissible. See N.J.R.E. 404(b); State v. Stevens, supra, 115 N.J. at 289, 558 A.2d 833. Nevertheless, if other-crime evidence or other-bad conduct evidence is probative as to other facts genuinely in dispute, is similar in kind and reasonably close in time to the offense charged, and is proven by clear and convincing evidence, it becomes admissible provided its probative value is not outweighed by its apparent prejudice. See N.J.R.E. 403; State v. Cofield, 127 N.J. 328, 338, 605 A.2d 230 (1992). Example of purposes for which other-crime evidence or other-bad conduct evidence is admissible is to demonstrate motive, intent, or absence of *1071 mistake or accident. See N.J.R.E. 404(b). To some extent, this type of evidence indeed establishes predisposition to commit the offense yet it is still admissible as long as its sole purpose is not to establish predisposition, and also satisfies the four Cofield factors.
The majority correctly recognizes that admissibility of other-crime evidence is left to the sound discretion of the trial court. See State v. Covell, 157 N.J. 554, 563, 725 A.2d 675, (1999); State v. Marrero, 148 N.J. 469, 483, 691 A.2d 293 (1997) (citing State v. DiFrisco, 137 N.J. 434, 496-97, 645 A.2d 734 (1994), cert. denied, 516 U.S. 1129, 116 S.Ct. 949, 133 L.Ed.2d 873 (1996)). For the reasons that follow I disagree with the majority's conclusion that the trial judge made a clear error of judgment. Our Supreme Court has recognized that because of its intimate knowledge of the case, the trial court is in the best position to engage in the critical balancing process necessary to determine whether evidence offered pursuant to N.J.R.E. 404(b), which is ordinarily a rule of exclusion, should be admitted. See State v. Ramseur, 106 N.J. 123, 266, 524 A.2d 188 (1987). Accordingly, determinations on the admissibility of other-crime evidence or other-bad conduct evidence are entitled to deference and are to be reviewed under an abuse of discretion standard. See State v. Covell, supra, 157 N.J. at 564, 725 A.2d 675; State v. Marrero, 148 N.J. 469, 483, 691 A.2d 293 (1997). "Only where there is a `clear error of judgment' should the trial court's conclusion with respect to that balancing test [necessary in determining admissibility of Rule 404(b) evidence] be disturbed." State v. Marrero, supra, 148 N.J. at 483, 691 A.2d 293. With all due respect to the majority, I believe it has given too little deference to the determination of the trial judge and effectively substituted its judgment for that of the trial judge.
In order to obtain a conviction the State was required to prove beyond a reasonable doubt that defendant either purposely or knowingly caused the death or serious bodily injury resulting in the death of the victim so as to constitute murder, N.J.S.A. 2C:11-3(a), or that defendant recklessly caused the victim's death under circumstances manifesting extreme indifference to human life, N.J.S.A. 2C:11-4(a), so as to constitute first-degree aggravated manslaughter, or that defendant recklessly caused the victim's death so as to constitute second-degree manslaughter, N.J.S.A. 2C:11-4(b)(1). If the evidence raised a reasonable doubt in the jury's mind as to whether the victim's death was caused accidentally, defendant would not be guilty of murder, aggravated manslaughter, or manslaughter. Accordingly, defendant's state of mind was highly relevant and evidence relating to his state of mind was extremely probative. In a series of prior New Jersey cases, evidence of arguments or violence between a defendant and a homicide victim has been admitted. See State v. Ramseur, supra, 106 N.J. at 267, 524 A.2d 188 (evidence of defendant's prior threats and violence towards the victim were admissible as tending to establish defendant's state of mind in stabbing the victim); State v. Donohue, 2 N.J. 381, 388, 67 A.2d 152 (1949) (evidence of prior beatings of defendant's wife, the murder victim, including incident that occurred eight years prior to murder, admissible to show defendant's state of mind); State v. Lederman, 112 N.J.L. 366, 372-73, 170 A. 652 (E & A 1934) (evidence of beating by defendant of husband three days before she allegedly beat husband to death was admissible to show intent and common scheme); State v. Schuyler, 75 N.J.L. 487, 488, 68 A. 56 (E & A 1907) (evidence of altercation between defendant and homicide victim admissible to show state of mind even though altercation occurred ten years earlier); State v. Slobodian, 120 N.J.Super. 68, 75, 293 A.2d 399 (App.Div.), certif. denied, 62 N.J. 77, 299 A.2d 75 (1972) (evidence that defendant threatened wife with a handgun two months before he shot her admissible to show defendant's state of mind).
Moreover, the fact that the prior-crime or prior-bad conduct evidence is directed at one other than the victim does not automatically render the evidence inadmissible. In State v. Nance, 148 N.J. 376, 386-90, 689 A.2d 1351 (1997), the Supreme Court held that evidence of defendant's prior conduct toward his ex-girlfriend was admissible in an effort to establish defendant's jealousy which, in *1072 turn, was admissible to establish a motive to explain why defendant acted the way he did in killing the victim, who had a good relationship with the ex-girlfriend. In State v. Mulero, 51 N.J. 224, 228, 238 A.2d 682 (1968), the Supreme Court allowed evidence of abuse of a third person, who was not the victim of the crime, to be admitted to show defendant's motive or intent. In State v. Wright, supra, 66 N.J. at 468-69, 332 A.2d 606, the Supreme Court found that defendant's act of starving one child was relevant to the issue of defendant's state of mind regarding the starvation death of the victim's twin. I am unpersuaded that the majority's attempted distinction of Nance, in that there the State's theory was that defendant killed the victim due to jealousy arising from defendant's belief that the victim had a relationship with defendant's girlfriend, and that the prior bad acts toward the ex-girlfriend arose from his jealousy requires a different result. In addition, I believe the majority's reading of State v. Mulero, 51 N.J. 224, 238 A.2d 682 (1968), which is admittedly "quite narrow" is actually much too narrow. To be sure, the Court, in Mulero, supra, noted that the evidence of the prior abuse of defendant's wife was properly admitted on redirect to meet defendant's point raised during cross-examination that the wife's testimony on direct examination was not credible. However, the Supreme Court made that observation only after concluding that the trial court did not mistakenly exercise its discretion in concluding that testimony regarding the alleged beatings by defendant of his wife would throw light on the state of mind with which defendant allegedly acted when he struck and killed his step-daughter. As in Mulero, supra, I conclude that the trial judge did not mistakenly exercise his discretion in admitting the evidence regarding the prior-crimes evidence or prior-bad conduct evidence of defendant towards defendant's assaults upon Davis insofar as they shed light upon his state of mind towards the victim and the absence of mistake.
Unfortunately, acts of familial physical abuse generally occur in the refuge of a home shielded from public view. Too often the only people who know what occurred are the abuser and the abused. As a result, frequently other-crime evidence is necessary as the only means of proof of a genuine issue of contested fact. See State v. Stevens, supra, 115 N.J. at 301, 558 A.2d 833 (for other-crimes evidence to be admitted to prove a fact in issue, the issue must be genuine and the other-crime evidence must be necessary for its proof). Provided the evidence is not offered solely to establish predisposition to commit the offense, and the proponent of that evidence establishes the four Cofield, supra, factors, it is deemed admissible. Here, without the other-crime evidence there was no evidence available to establish the genuine issues of defendant's state of mind and the absence of accident or mistake. In this case, unfortunately the victim was unable to tell what happened. Therefore, in the context of child abuse our courts have previously held that evidence of prior-crimes or prior-bad conduct is admissible when relevant to establish defendant's state of mind or to negate a contention that the victim's death was due to accidental means. See State v. Wright, 66 N.J. 466, 468, 332 A.2d 606 (1975), rev'd on dissent, 132 N.J.Super. 130, 148, 332 A.2d 614 (App.Div.1974) (Allcorn, J.A.D., dissenting) (in prosecution for homicide due to death of child from malnutrition evidence that victim's twin sister also suffered from malnutrition was admissible); State v. Elmore, 205 N.J.Super. 373, 384, 500 A.2d 1089 (App.Div.1985) (prior episodes of child abuse unconnected with the cause of an infant's death are admissible as proof of intent or absence of accident or mistake); State v. Compton, 304 N.J.Super. 477, 482-83, 701 A.2d 468 (App.Div.1997), certif. denied, 153 N.J. 51, 707 A.2d 154 (1998), (evidence of prior instances when the child suffered harm while in defendant's care was relevant and admissible to rebut defendant's claim that his child's death was accidental); State v. Moorman, 286 N.J.Super. 648, 660, 670 A.2d 81 (App.Div.1996) (evidence of prior episodes of child abuse unconnected with the direct cause of the child's death was admissible as proof of absence of accident or mistake).
Although, presumably defendant knows what occurred since the child was left in his care, defendant has given three different versions of what may have led to the victim's *1073 death. Alternatively, defendant suggested that neither he nor Davis had left their apartment, and that the victim had been sick with the flu since Christmas; he then suggested in a subsequent statement that he and Davis had engaged in a physical fight on the preceding day during which the victim may have accidentally been struck; later, he suggested that he had wrapped his fists with pillow cases and "play-boxed" with the victim, hitting the child more than ten times over a fifteen-minute time span, and that while "play-boxing" the victim was standing in the corner and struck her head on the wall. On the other hand, the County Medical Examiner opined that the victim had sustained severe internal injuries, including a two-inch laceration of the liver and that those injuries were caused by multiple blunt force impacts as would be inflicted by a fist. He also opined that the type of force required to inflict that type of injury would be a minimum of eight to ten "very substantial or forceful impacts" to the abdominal region. Simply put, what happened to the victim and how it happened was extremely relevant. Evidence tending to establish defendant's state of mind while the victim was in his custody sheds light on whether the injuries were incurred either purposely, knowingly, or recklessly and would be extremely helpful to the jury in its fact-finding mission. Indeed, the evidence regarding defendant's violent conduct toward Davis all occurred within two to three months prior to the victim's death. In fact, the last incident occurred on the night before the victim's death when defendant became angry and punched Davis in the stomach and face because she refused to give defendant money to purchase beer. Where the proof of similar acts by defendant tends to establish that the offense for which he is on trial was not inadvertent, accidental, unintentional, or without knowledge, such evidence is almost universally admitted. See State v. M.L., 253 N.J.Super. 13, 22, 600 A.2d 1211 (App.Div.1991), certif. denied, 127 N.J. 560, 606 A.2d 371 (1992). Evidence tending to establish motive or intent requires a very strong showing of prejudice in order to justify exclusion. See State v. Covell, supra, 157 N.J. at 570, 725 A.2d 675; State v. Rogers, 19 N.J. 218, 228, 116 A.2d 37 (1955) (a somewhat wider range of evidence is permitted when evidence of the motive or intent of the accused is important and material). Here, the evidence was highly relevant and was the only evidence available to establish defendant's state of mind and the absence of mistake. It was not offered for the sole purpose of establishing defendant's predisposition to commit a crime. It was offered to shed light on defendant's state of mind and the absence of mistake. The trial judge did not mistakenly exercise his discretion in permitting the evidence to be introduced. Certainly the jury was not overwhelmed by this evidence since they found defendant not guilty of murder, and guilty of the lesser-included offense of aggravated manslaughter.
Indeed, in this appeal defendant does not argue that the other-crimes or other-bad conduct evidence was not relevant to a material issue that is genuinely disputed or is not similar in kind and close in time between the conduct at issue and the previous conduct. See State v. Cofield, supra, 127 N.J. at 338, 605 A.2d 230. Rather, defendant contends that the evidence was not clear and convincing and that its probative value was outweighed by its prejudice to the defendant. Ibid. Those contentions are clearly without merit. See R. 2:11-3(e)(2). The trial judge did not mistakenly exercise his discretion in concluding that the evidence was clear and convincing, and that its probative value was substantially outweighed by the risk of undue prejudice to defendant. See State v. Covell, supra, 157 N.J. at 575, 725 A.2d 675; State v. Marrero, supra, 148 N.J. at 483, 691 A.2d 293. The trial judge has the "feel" for the case which we cannot obtain based upon the review of a cold record. Accordingly, in making these evaluations the trial judge is given a wide range of judgment which should not be upset unless there has been a mistaken exercise of that discretion. See State v. Koedatich, 112 N.J. 225, 312, 548 A.2d 939 (1988), certif. denied, 488 U.S. 1017, 109 S.Ct. 813, 102 L.Ed.2d 803 (1989). An appellate court must uphold the judgment of the trial judge unless it can be shown that the decision of the trial judge was so wide of the mark that a manifest denial of justice resulted. State v. Carter, 91 N.J. 86, 106, 449 A.2d 1280 (1982). The record clearly supports the *1074 decisions of the trial judge and I would not interfere with those decisions.
I also disagree with the majority's conclusion that the trial judge's instructions were inadequate. First of all, defendant did not object to that portion of the charge relating to the other-crime or other-bad conduct evidence pursuant to R. 1:7-2. The absence of an objection suggests that trial counsel perceived no error or prejudice and, in any event, prevented the trial judge from remedying any possible confusion in a timely manner. See State v. Chew, 150 N.J. 30, 82, 695 A.2d 1301 (1997). Indeed, on appeal, defendant has not complained of the adequacy of the judge's charge in this regard. Accordingly, the charge must be reviewed in the context of the plain error rule. See R. 2:10-2. In charging a jury regarding the use of other-crime evidence, the trial judge must not only caution against a consideration of that evidence for improper purposes but must also, through specific instruction, direct and focus the jury's attention on the permissible purposes for which the evidence is to be considered. See State v. G.S., 145 N.J. 460, 472, 678 A.2d 1092 (1996). When evidence is admitted pursuant to N.J.R.E. 404(b), the trial judge must craft a limiting instruction addressed to the use of that evidence and explain precisely the permitted and prohibited purposes of the evidence, with sufficient reference to the factual context of the case to enable the jury to comprehend and appreciate the fine distinction to which it is required to adhere. See State v. Stevens, supra, 115 N.J. at 304, 558 A.2d 833. More is required than to merely state the exceptions contained in the Rule. See State v. G.S., supra, 145 N.J. at 472, 678 A.2d 1092. Although the instructions could, perhaps, have been more thorough, they clearly conveyed to the jury the fact that the evidence was not submitted "to show that the defendant is a bad person or has a disposition which shows that he is likely to have committed the crimes which he is charged with". Moreover, the jury was specifically instructed that the evidence was not submitted "to show a general disposition of the defendant to commit bad acts. This is not the purpose of such testimony and it should not be considered by you as such". Hence, the trial judge specifically prohibited the jury from using that evidence to infer that because of defendant's prior bad conduct toward Davis he had a propensity or predisposition to murder the victim. See State v. Nance, supra, 148 N.J. at 391-92, 689 A.2d 1351. Moreover, the judge specifically instructed the jury that the evidence was introduced and could only be considered if the jury found it relevant to the issue of whether the defendant acted either knowingly, purposely, or recklessly or whether the death of the victim was accidental. Finally, the judge told the jury that the evidence could be considered only on those issues and for no other purpose. Accordingly, the jury was instructed on how it could and could not use the other-conduct evidence, assuming they believed it to be true; see State v. G.S., supra, 145 N.J. at 472, 678 A.2d 1092. In my opinion the jury was adequately instructed as to how it could and could not use the evidence. I conclude that there was no error in failing to more specifically instruct the jury, let alone plain error, one clearly capable of producing an unjust result. See R. 2:10-2; State v. Macon, 57 N.J. 325, 336, 273 A.2d 1 (1971). To be sure, the judge could have been more specific in reviewing the testimony introduced regarding defendant's prior bad acts towards Davis. However, had the judge done so he would have run the risk of unintentionally conveying an impression to the jury that he endorsed the State's theory.
I next consider defendant's sentence. In my view the trial judge properly identified and balanced the aggravating and mitigating factors, and those conclusions are supported by competent credible evidence in the record. See State v. O'Donnell, 117 N.J. 210, 215-16, 564 A.2d 1202 (1989). Moreover, the sentence does not shock my judicial conscience. Ibid. Defendant's contention that the trial judge erred in sentencing him to greater than the minimum terms and imposing periods of parole ineligibility is without merit. See R. 2:11-3(e)(2).
However, in determining whether sentences for separate offenses should be served consecutively, a sentencing court should focus on the fairness of the overall sentence. See State v. Miller, 108 N.J. 112, 121, 527 A.2d 1362 (1987). The imposition of consecutive *1075 or concurrent sentences rests in the discretion of the court. State v. Yarbough, 100 N.J. 627, 636, 498 A.2d 1239 (1985), cert. denied, 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986). The factors to be considered include facts relating to the crimes, among them whether or not:
(a) the crimes and their objectives were predominately independent of each other;
(b) the crimes involved separate acts of violence or threats of violence;
(c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;
(d) any of the crimes involved multiple victims;
(e) the convictions for which the sentences are to be imposed are numerous.
[Id. at 644, 498 A.2d 1239.]
Defendant contends that consecutive sentences were improperly imposed because both the aggravated manslaughter and the child endangerment charges arose out of the same conduct, the punching of the victim. In rejecting merger and imposing consecutive sentences, the trial judge concluded that defendant's refusal to provide the child with medical care and his preventing Davis from taking the child to the hospital for approximately eight hours after the assault, knowing that the child was in obvious distress, constitutes endangering which was separate and apart from the physical acts of violence. The judge therefore concluded that defendant's intent in denying the child the medical attention that she needed was to avoid detection, and had he sought such assistance the child's life may have been saved. However, there was no evidence introduced at trial to support that conclusion. Moreover, the case appears to have been tried on a theory that
the defendant's acts in beating the child were the same acts that were the predicates for the conviction for endangering the welfare of a child. Accordingly, I believe a remand for resentencing is necessary in order to determine the validity of the trial court's reasons for imposing consecutive sentences. See State v. Miller, supra, 108 N.J. at 122, 527 A.2d 1362. The two offenses, although distinct, were closely related. Moreover, the preponderance of aggravating factors was used as a basis for imposing sentences longer than the presumptive ones and should not have been used again to support the imposition of consecutive sentences. Ibid. On remand, if the trial judge, when initially imposing the sentence, had a specific length of sentence in mind, he may consider restructuring the sentence, if concurrent sentences are imposed, including the possibility of increasing the sentence on the aggravated manslaughter conviction provided the aggregate sentence imposed is not increased beyond the initial sentence and further provided, of course, that he is satisfied that the ultimate sentence imposed is appropriate after identifying, considering, weighing, and evaluating the appropriate statutory aggravating and mitigating factors. See State v. Rodriguez, 97 N.J. 263, 277, 478 A.2d 408 (1984); State v. Espino, 264 N.J.Super. 62, 68-69, 624 A.2d 27 (App.Div.1993).
I would remand for resentencing consistent with this opinion, and in all other respects I would affirm the judgment of conviction.
NOTES
[1] Davis's testimony is more fully evaluated in Part I of this opinion.
[2] The child was pronounced dead at 10:07 p.m.
[3] The phrase "very substantial or forceful impacts" is the basis of defendant's third point of error, infra, as the medical examiner's written report provided to defendant before trial used the phrase, "significant." Due to the deviation in the witness's testimony, defendant objected and moved for a mistrial. The judge overruled the objection. The judge concluded that the use of the words "substantial or forceful impact" was not appreciably different from the words "significant or forceful impact" as used in the written report and denied defendant's motion for a mistrial.
[4] At the pre-trial hearing, the State also produced two of Davis's friends to corroborate her assertion that defendant had previously assaulted her. Once the trial judge ruled that evidence of defendant's assaults upon Davis would be admissible at trial, the State presented these two witnesses as part of its direct case at trial.
[5] Because of our colleague's dissent, we are obliged to comment on defendant's sentence. We agree with the analysis as set forth on pages 595-97, 727 A.2d at 1074-75 of the dissent. Were we willing to affirm defendant's conviction, we would have vacated the sentence imposed and would have remanded to the trial judge for resentencing for the reasons expressed in the dissenting opinion.
[6] In Nance, the Court wrote, "In Mulero, the Court held that the defendant's alleged physical abuse of his wife was admissible to establish intent in the trial of the defendant for allegedly murdering his stepdaughter." 148 N.J. at 389, 689 A.2d 1351 (citing Mulero, supra, 51 N.J. at 228-29, 238 A.2d 682).
[7] The Court in Marrero stated that the Mulero Court "held that admission of the [defendant's wife's] testimony was proper because it was probative of the defendant's intent with regard to his striking the victim." 148 N.J. at 486, 691 A.2d 293.
[8] In Covell, the Court wrote that in Mulero the "Court held that admitting the testimony [of defendant's wife] was proper because it was probative of the defendant's intent with regard to his striking the victim." 157 N.J. at 565, 725 A.2d 675.